UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LANCE COCKRELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV00765 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by

Lance Cockrell, a person in federal custody.  On July 17, 2008, Cockrell was found guilty by a

jury of the offense of conspiracy to possess with intent to distribute cocaine and cocaine base. On

October 17, 2008, the Honorable Donald J. Stohr, now retired, sentenced Cockrell to the Bureau

of Prisons for a term of 120 months, a sentence within the sentencing guideline range.  Cockrell's

§ 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully

briefed and ripe for disposition.

**STATEMENT OF FACTS**

1. On or about November 29, 2007, petitioner Lance Cockrell (hereinafter, "Mr.

Cockrell") was charged by way of Superseding Indictment with one count of Conspiracy to

Distribute and Possess With the Intent to Distribute Cocaine and Cocaine Base.[1] (Docket #22)[2]

---

[1]Mr. Cockrell was not charged in the original Indictment, which charged only codefendant Avery West. Mr. Cockrell and other co-defendants were added when the Grand Jury returned the Superseding Indictment.

[2]All references to "Docket #," unless otherwise specified, refer to the Official Court Docket, case number 4:07CR656 DJS, United States District Court Eastern District of Missouri, also referred to herein as "the underlying criminal case."

2. Mr. Cockrell was arrested on December 6, 2007, and appeared before United States Magistrate Judge Terry I. Adelman for Initial Appearance on the same date. (Docket #51)

3. Attorney Ellen M. Kelly was appointed to represent Mr. Cockrell. (Docket # 50)

4. Mr. Cockrell appeared before United States Magistrate Judge MaryAnn L. Medler on December 13, 2007 for arraignment. Judge Medler ordered Mr. Cockrell to file pre-trial motions, if any were to be filed, by December 26, 2007. (Docket # 75, 77)

5. On December 19, 2007, counsel for co-defendant Avery West filed a Motion to Continue Trial Date. (Docket # 81). In that motion, counsel requested the "continuance due to the voluminous discovery and the complexity of the case."

6. On December 20, 2007, United States District Judge Donald J. Stohr issued a Speedy Trial Order in which he granted co-defendant West's motion to continue as to all defendants. In the order, Judge Stohr specifically noted "that the ends of justice served by such continuance outweigh the best interest of the public and defendant in a speedy trial. Due to the nature of the case, which is unusual and complex, it is unreasonable to expect adequate preparation for pretrial proceedings." (Docket # 84). Accordingly, the trial was continued to April 7, 2008.

7. On December 26, 2007, attorney Ellen M. Kelly filed, on Mr. Cockrell's behalf, a "First Motion for Extension of Time to File Pre-Trial Motions." (Docket # 93)

8. The motion was granted in part and denied in part. Judge Medler set the matter for scheduling conference on January 3, 2008.

9. On January 3, 2008, the parties (by their attorneys) appeared for the scheduling conference. (Docket #95)

10. On January 7, 2008, attorney Ellen M. Kelly filed a Waiver of Filing Pre-Trial

Motions on behalf of Mr. Cockrell. (Docket # 116)

11. On February 29, 2008, Mr. Cockrell appeared before Judge Medler for a waiver of his right to file pre-trial motions. The Court accepted his waiver. (Docket # 139, 140) The case was set for trial on April 7, 2008. (Docket # 139)

12. On March 21, 2008, co-defendant Avery West, through counsel, filed a motion to continue the April 7, 2008 trial date. Mr. West's motion specifically stated that although counsel had "not conferred with all of the attorneys in this case," "it is anticipated that all counsel would consent to a continuance." (Docket # 164) The motion also requested that "the Court make a finding that this case falls outside the limits set forth in the speedy trial act." (Docket # 164)

13. Mr. Cockrell did not respond to or oppose Mr. West's motion to continue.

14. Receiving no objections to Mr. West's motion to continue, Judge Stohr issued a Speedy Trial Order on March 27, 2008. In that order, the Court specifically concluded "that the ends of justice served by such continuance outweigh the best interest of the public and defendants in a speedy trial. Due to the nature of the case, which is unusual and complex, it is unreasonable to expect adequate preparation for pretrial proceedings." The Court granted the motion to continue and scheduled the matter for trial on June 2, 2008. (Docket # 165)

15. Mr. Cockrell did not object to the entry of the aforementioned Speedy Trial Order, and did not file a motion to sever.

16. On April 30, 2008, Mr. West filed a Second Motion to Continue Trial Setting. (Docket # 176) He specifically requested that the Court "make a finding that this case falls outside the limits set forth in the speedy trial act," and grant a two-week continuance, to June 16, 2008. (Docket # 176)

17. Judge Stohr granted the Second Motion to Continue Trial Date and made a finding concluded "that the ends of justice served by such continuance outweigh the best interest of the public and defendants in a speedy trial. Due to the nature of the case, which is unusual and complex, it is unreasonable to expect adequate preparation for pretrial proceedings." (Docket # 177) Trial was rescheduled for June 16, 2008. (Docket # 177)

18. Mr. Cockrell did not respond to Mr. West's Second Motion to Continue Trial Date, and did not object to the second Speedy Trial Order.

19. On May 22, 2008, Mr. Cockrell appeared before District Judge Stohr for a change of plea hearing. However, Mr. Cockrell announced that he had a conflict with his attorney, Ellen M. Kelly. Ms. Kelly made an oral motion to withdraw from representing Mr. Cockrell. The Court granted Ms. Kelly leave to withdraw and appointed attorney Joan K. Miller as substitute counsel. (Docket # 186)

20. Mr. Cockrell was next scheduled to appear before Judge Stohr for change of plea hearing on June 10, 2008. However, Mr. Cockrell failed to appear for the hearing because of a medical problem. The Court reschedule the change of plea for June 11, 2008. (Docket # 213)

21. On June 13, 2008, Mr. Cockrell appeared for his change of plea hearing. At that time, he informed the Court that he did not wish to enter a "guilty" plea but wished instead to proceed to trial. (Docket # 221)

22. On June 13, 2008, the government filed a motion to sever Mr. Cockrell from the remaining defendants. (Docket # 216)

23. The Court granted the government's motion to sever and set Mr. Cockrell's trial for July 14, 2008. (Docket # 219)

-4-

24. Attorney Joan K. Miller filed motions in limine on Mr. Cockrell's behalf, and responded to each of the government's motions. (Docket # 231, 232, 234)

25. Mr. Cockrell's trial commenced on July 14, 2008. (Docket # 250)

26. The jury found Mr. Cockrell guilty as charged. (Docket # 253)

27. Mr. Cockrell appeared for sentencing on October 17, 2008. (Docket # 343) He was sentenced to a term of 120 months - the minimum mandatory term of imprisonment for the offense of which he was convicted.

28. Mr. Cockrell timely appealed. (Docket # 341)

29. Counsel for Mr. Cockrell filed an opening brief pursuant to Anders v. California, 386 U.S. 738 (1967), challenging the sufficiency of the evidence against Mr. Cockrell. The United States Court of Appeals for the Eighth Circuit conducted a *de novo* review and concluded that the evidence was sufficient to support the conviction. In addition, the Court reviewed the record independently pursuant to Penson v. Ohio, 488 U.S. 75, 80 (1988) and concluded that there were no nonfrivolous issues which could have formed the basis for a further appeal. (Case number 08-3525, United States Court of Appeals for the Eighth Circuit). The opinion was dated January 25, 2010. (Docket # 451)

## DISCUSSION

## I.    MR. COCKRELL WAIVED HIS RIGHT TO ASSERT A SPEEDY TRIAL VIOLATION

Mr. Cockrell first asserts that he was unconstitutionally denied his right to a speedy trial. The "Speedy Trial Act," codified at Title 18, United States Code, Section 3161, provides, in pertinent part, that a trial shall "commence within seventy days from the filing date (and making

public) of the . . . indictment, or from the date the defendant has appeared before a judicial

officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C.

§3161(c)(1). "If a defendant is not brought to trial within this time period, upon the defendant's

motion, the district court must dismiss the information or indictment." *United States v. Rector*,

598 F. 3d 468, 471 (8th Cir. 2010). However, "when a defendant fails to assert his right to a

speedy trial by moving for a dismissal before trial, the right is waived." *United States v.*

*Williams*, 605 F. 3d 556, 572-73 (8th Cir. 2010); 18 U.S.C. §3162(a)(2) ("Failure of the

defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall

constitute a waiver of the right to dismissal under this section.")

 In the instant case, Mr. Cockrell did not make a motion to dismiss prior to trial. His

failure to do so constitutes a waiver of his right to seek dismissal based upon any alleged

violation of the Speedy Trial Act. This Court will summarily deny Mr. Cockrell's request for

relief in this regard.

## II. MR. COCKRELL WAS NOT DENIED HIS RIGHT TO A SPEEDY TRIAL

 Even on the merits of Mr. Cockrell's speedy trial claim he is not entitled to relief. This

Court agrees that the Speedy Trial Act requires that trial shall "commence within seventy days

from the filing date (and making public) of the . . . indictment, or from the date the defendant has

appeared before a judicial officer of the court in which such charge is pending, whichever date

last occurs. " 18 U.S.C. §3161(c)(1). However, it is crucial to note that the Act also describes

certain "periods of delay" which "shall be excluded" "in computing the time within which the

trial of any such offense must commence." 18 U.S.C. §3161(h).

 In the instant case, the seventy day period of time proscribed by the Speedy Trial Act

began to run on December 14, 2007 - the day after Mr. Cockrell appeared before United States

Magistrate Judge MaryAnn L. Medler for arraignment. *See*, *United States v. Yerkes*, 345 F. 3d

558, 561 (8th Cir. 2003) (Calculation for purposes of speedy trial begins on the day following

arraignment and continues until the date of trial). Judge Medler ordered that the trial be set on

February 19, 2008 - less than 70 days after the arraignment. The parties were ordered to file

pretrial motions, if any, on or before December 26, 2007. Arguably, the speedy trial clock ran

from December 14, 2007 until it was tolled on December 19, 2007. A total of five days elapsed.

On December 19, 2007, counsel for co-defendant Avery West filed a motion to continue

the February 2008 trial setting, citing the "voluminous discovery" and "complexity of the case."

The District Court, in an order dated December 20, 2007, made a finding that "the ends of justice

served by such continuance outweigh the best interest of the public and defendant in a speedy

trial. Due to the nature of the case, which is unusual and complex, it is unreasonable to expect

adequate preparation for pretrial proceedings." The Court then granted the motion, delaying the

trial until April 7, 2008.

The Speedy Trial Act, by its own terms, provides that:

> Any period of delay resulting from a continuance granted by any
> judge on his own motion or at the request of the defendant or his
> counsel . . . if the judge granted such continuance of the basis of
> his findings that the ends of justice served by taking such action
> outweigh the best interests of the public and the defendant in a
> speedy trial.

18 U.S.C. §3161(h)(7)(A). Any "time excludable for one defendant is excludable for all

defendants." *United States v. Shealey*, 2011 WL 1549487 (4th Cir. 2011), *citing*, *United States v.*

*Jarrell*, 147 F. 3d 315, 316 (4th Cir. 1998); *United States v. Vogl*, 374 F. 3d 976, 983 (10th Cir.

2004)(delays attributable to one defendant are applicable to all co-defendants for purposes of the Speedy Trial Act); *United States v. Mustread*, 42 F. 3d 1097, 1106 (7th Cir. 1004) (absent a severance, any time excludable to one defendant is excludable to his co-defendants). Therefore, the time between the December 19, 2007 motion to continue and the rescheduled trial date on April 7, 2008, is excludable as to all defendants, including Mr. Cockrell[3]

Prior to the April 7, 2008 trial date, counsel for Mr. West made another motion to continue the trial date.[4] On March 21, counsel for Mr. West moved for a continuance, citing several reasons, including: the case involved a multi-count, multi-defendant indictment; counsel was not appointed until March 6, 2007; the case is complex and included a Title III wiretap over which approximately 7,000 phone calls were intercepted, and; evidentiary motions remained pending before Judge Medler. Counsel for Mr. West specifically requested that the District Court "make a finding that this case falls outside the limits set forth in the speedy trial act." (Docket # 164). The District Court did just that when, on March 27, 2008, Judge Stohr issued an order finding once again that "the ends of justice served by such continuance outweigh the best interest of the public and defendant in a speedy trial." (Docket # 165). The trial date was continued to June 2, 2008.

Like the period of time between December 19, 2007 and April 7, 2008, the period between April 7, 2008 and June 2, 2008 is excluded from the calculation under the Speedy Trial Act. This delay was occasioned by the co-defendant's motion to continue and was supported by sufficient findings demonstrating that the interests of justice were best served by such

---

[3]

[4]

continuance. This period of delay is attributable equally to all co-defendants, including

Mr. Cockrell. Therefore, no additional days between April 7, 2008, and June 2, 2008, should be

counted toward the seventy day limitation proscribed by the Speedy Trial Act.

On April 30, 2008, well in advance of the June 2, 2008, trial date, counsel for

codefendant West made another motion to continue. (Docket # 176). In the motion, counsel again

referenced the complexity of the case and the number of telephone conversations that were

intercepted, along with new grounds including Fifth Amendment considerations pertaining to

potential defense witnesses. (Docket # 176). Mr. West, through counsel, requested that the trial

be continued to June 16, 2008. Once again, the District Court obliged, making the requisite

findings pursuant to the Speedy Trial Act. (Docket # 177). The Court continued the trial until

June 16, 2008. Any days falling between June 2, 2008, and June 16, 2008, should therefore be

excluded from the speedy trial calculation as to all defendants.

On May 22, 2008, prior to the scheduled June 16, 2008, trial date, Mr. Cockrell appeared

before Judge Stohr for a change of plea hearing. However, Mr. Cockrell did not enter a change

of plea. Rather, his appointed attorney Ellen M. Kelly advised the Court that a conflict had

arisen between herself and her client that created an untenable situation. Ms. Kelly then orally

moved to withdraw from representing Mr. Cockrell. The Court granted the motion and

appointed substitute counsel, Joan K. Miller.

On June 10, 2008, prior to the scheduled June 16, 2008 trial date, Mr. Cockrell was

scheduled to appear for a change of plea hearing. However, Mr. Cockrell was suffering from a

medical problem, causing a short delay. The matter was re-set for June 13, 2008 and

Mr. Cockrell appeared on that date. Once again, however, Mr. Cockrell elected not to change

his plea and notified the Court that he wished to proceed to trial. The government thereafter moved to sever Mr. Cockrell from the remaining co-defendants for purposes of trial. (Docket # 216). As a result of this severance, the government concedes that further continuances granted to co-defendants upon their motions would not be attributable to Mr. Cockrell. In addition, the government concedes that the speedy trial clock began to run once again.

The Court scheduled Mr. Cockrell's trial for July 14, 2008, - approximately 30 days after Mr. Cockrell was severed from his co-defendants such that their further delays were attributed to him. At this juncture, only five (5) days - December 14, 2007, through December 19, 2007, - had elapsed for purposes of the speedy trial calculation. Those five days, when added to the thirty days from the date of the severance and trial setting to the date of commencement of Mr. Cockrell's trial, amount to only 35 of the 70 days allotted by the Speedy Trial Act.

Mr. Cockrell's speedy trial calculation began on December 14, 2007 and ended on July 14, 2008. However, the period of delay between December 19, 2007, and June 13, 2008, was occasioned by the motions of co-defendants and was attributable to Mr. Cockrell, and it is therefore excluded form his Speedy Trial Act calculation. The thirty-five days that are counted fall far short of the 70 days within which the trial must commence pursuant to the Act. Therefore, Mr. Cockrell was not denied his constitutional right to a speedy trial and his claim for relief will be denied.

## III.    EVEN IF MR. COCKRELL RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, HE HAS NOT DEMONSTRATED THAT HE SUFFERED ANY PREJUDICE AND IS THEREFORE NOT ENTITLED TO RELIEF

In order to state a cognizable claim of ineffective assistance of counsel, Mr. Cockrell must first establish that his counsel's performance was deficient and that the deficient

performance prejudiced his defense. *Strickland v. Cockrell*, 466 U.S. 668, 700 (1984). As to

each of his many claims, Mr. Cockrell must prove that (1) his lawyer's performance was

constitutionally deficient and (2) that he suffered prejudice. Mr. Cockrell bears the burden of

proving both constitutional deficiency and prejudice. *Patterson v. United States*, 133 F. 3d 645,

647 (8th Cir. 1998). It is well-settled that in order to establish ineffective assistance of counsel, a

defendant "faces a heavy burden." *United States v. Alexander*, 2009 WL 1421203, at *2 (E.D.

Mo. May 20, 2009), *citing United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

As to each claim, Mr. Cockrell must demonstrate not only that defense counsel made

errors, but that those errors were so serious that counsel was no longer functioning as counsel,

thereby depriving Mr. Cockrell of his Sixth Amendment right. *Strickland*, 466 U.S. at 687.

Counsel is entitled to the strong presumption that his conduct falls within the wide range of

professionally reasonable assistance. *Nguyen v. United States*, 114 F. 3d 699, 703-703 (8th Cir.

1997)(quoting *Strickland*, 466 U.S. at 689). The conduct at issue must be evaluated with an eye

toward the circumstances surrounding the decisions at the time they were made, not in hindsight.

*Strickland*, 466 U.S. at 680.

Even if Mr. Cockrell succeeds in demonstrating that counsel made errors of

constitutional proportion, he still cannot prevail if he is unable to prove also that in the absence

of those errors, the outcome of the proceeding at issue would have been different. *Id*. at 697

(object of ineffective assistance claim is not to grade counsel's performance; "If it is easier to

dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice...that

course should be followed"). Simply put, "the relevant inquiry is whether a reasonable

probability exists that the fact finder would have entertained a reasonable doubt as to defendant's

-11-

guilt in the absence of counsel's errors." *Davis v. United States*, 865 F. 2d 164,166 (8th Cir. 1988), citing *Strickland*, 466 U.S. at 695.

It is abundantly clear that, pursuant to *Strickland* and the long line of cases decided in its wake, that Mr. Cockrell bears the burden to convince this Court that *assuming* he received ineffective assistance of counsel, he suffered some prejudice as a result. *Strickland*, 466 U.S. at 700. In the context of Mr. Cockrell's case, he must demonstrate a "reasonable probability" that, but for counsel's errors, the jury "would have entertained a reasonable doubt" as to his guilt. *Davis*, 865 F. 2d 166. Although Mr. Cockrell makes myriad suggestions as to his counsel's deficiencies, he fails to demonstrate how these "errors" prejudiced him. Although Mr. Cockrell claims that the alleged errors "are cumulative and prejudicial," he provides no argument in support of this conclusion, and he fails to demonstrate how the outcome of his trial would have been different had the "errors" not occurred. Apparently, he expects this Court to assume, as he has, that these errors must have led to his conviction. However, *Strickland* does not permit such assumptions and this Court is similarly unwilling to accept them as meeting his burden.

A.   **Mr. Cockrell can demonstrate no prejudice in counsel's failure to file pretrial motions.**

Mr. Cockrell claims, without argument, that counsel's failure to file pretrial motions "prejudiced" him. "[P]rejudice resulting from counsel's failure to fie a motion occurs only if the motion would have been successful." *United States v. Sanders*, 2006 WL 3827520 at 2, *citing*, *United States v. Johnson*, 707 F. 2d 317, 320 (8th Cir. 1983); *see also*, *United States v. Littlewind*, 2011 WL 597061 (D.N.D.) (Jan. 21, 2011) ("Counsel's failure to file a motion to suppress the second statement did not prejudice [defendant's] defense if the motion would not

have been likely to succeed.") In his motion, Mr. Cockrell does not so much as identify even one motion which he alleges should have been filed, let alone establishing any likelihood that such a motion would have succeeded. As a result, the government is virtually unable to competently respond to his claim in this regard. Unless Mr. Cockrell can demonstrate to this Court's satisfaction that *any* pretrial motion, if filed, would have likely succeeded and had some impact on the outcome of the case, he is entitled to no relief.

**B.      Mr. Cockrell suffered no prejudice from counsel's failure to request a medical or psychological examination.**

Although Mr. Cockrell now claims that his attorney should have requested a medical and/or mental evaluation for him based upon his history of a head injury, Mr. Cockrell has made no claim that he ever *asked* his attorney to request such an examination. Mr. Cockrell also makes no claim that he ever *asked* his attorney to pursue a diminished capacity defense. Mr. Cockrell does not suggest that he was incompetent to stand trial, or that he failed to understand or appreciate the charges against him.

To the extent that Mr. Cockrell suggests that he may have been incompetent to stand trial, this Court is in agreement that when there is "'reasonable cause' to believe that a defendant is 'presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense,' a psychiatric examination must be ordered." *Newfield v. United States*, 565 F. 2d 203, 206 (2nd Cir. 1977), 18 U.S.C. § 4241(a). "In determining whether there is reasonable cause to order a competency hearing, a trial court must consider all evidence before it, including evidence of irrational behavior, the defendant's demeanor. . . and medical opinions concerning the defendant's

-13-

competence." *United States v. Mason*, 52 F. 3d 1286, 1290 (4th Cir. 1995). In the event that counsel for Mr. Cockrell had requested an evaluation, this Court would have been required to assess that claim in light of these considerations.

Mr. Cockrell testified on his own behalf at trial, and during his testimony never suggested to the jury that he was suffering from diminished mental capacity or the effects of a brain injury at the time he committed the acts with which he was charged. He wrote coherent letters to the trial judge in mitigation of his own sentence, and although Mr. Cockrell mentioned the head injury, he never suggested that it impaired his ability to comprehend the proceedings, or that it somehow factored into the commission of the offense for which he was convicted. To state the obvious, Mr. Cockrell has proffered no evidence tending to establish that he was incompetent at the time of trial, or that he suffered from a diminished mental capacity at the time of the offense such that he was not legally culpable for the crime of which he was ultimately convicted. Quite simply, Mr. Cockrell cannot demonstrate that the medical and/or mental examination he now claims should have been requested is likely to have altered the outcome of any proceeding. Therefore, he is unable to demonstrate prejudice and is not entitled to relief.

C.    **Mr. Cockrell cannot demonstrate prejudice arising out of his counsel's failure to object to the government's introduction of binders of certified public documents associated with the Title III wiretap.**

Mr. Cockrell next complains that he received constitutionally ineffective assistance when his trial counsel failed to object to the admission into evidence of binders of certified documents associated with the Title III wiretap conducted during the investigation of the case.[5] Once again,

_____

[5]These documents had been authenticated and received into evidence at a previous hearing on co-defendant Avery West's Motion to Suppress Electronic Surveillance. They were certified copies of official Court documents, admitted pursuant to Federal Rule of Evidence 902

Mr. Cockrell's suggestion that these documents were "highly prejudicial" and "poisoned the jury" amounts to nothing more than rank speculation. As a preliminary matter, Mr. Cockrell's claim is based upon a faulty premise. Although it is true that the binders were admitted into evidence, they were not provided to the jury and the jury was NOT "allowed to peruse some." The binders were admitted for the sole purpose of laying the proper foundation (which ironically Mr. Cockrell now claims was lacking) for the Title III wiretap evidence. Mr. Cockrell cannot demonstrate that the jury ever saw the disputed documents, let alone read them or improperly considered them. He certainly cannot demonstrate that had the documents not been admitted into evidence, the jury would likely have entertained a reasonable doubt as to his guilt. Therefore, he is not entitled to relief.

**D.    Mr. Cockrell cannot demonstrate that an objection to the admissibility of the wiretap tapes would have succeeded, therefore he has shown no prejudice.**

Mr. Cockrell next claims, once again in summary fashion and without citations to the record or legal support, that his attorney provided constitutionally ineffective assistance of counsel when she failed to object to the admission into evidence of recorded telephone conversations intercepted over the Title III wiretap utilized during the investigation of Mr. Cockrell and his co-defendants. Mr. Cockrell suggests, without argument, that the recordings were admitted improperly in that "no chain of custody was established."

"The admission of tape recordings is 'within the sound discretion of the trial court.'" *United States v. Oslund*, 453 F. 3d 1048, 1054 (8th Cir. 2006) (internal citations omitted). In Oslund, the United States Court of Appeals for the Eighth Circuit carefully explained the

---

as self-authenticating public documents. An objection to the admission of these documents is extremely unlikely to have succeeded.

requisite foundation for the admissibility of a recorded conversation. Specifically, the trial court should consider whether the proponent of the recording has demonstrated:

> (1) That the recording device was capable of taking the conversation now offered in evidence. (2) That the operator of the device was competent to operate the device. (3) That the recording is authentic and correct. (4) That changes, additions or deletions have not been made in the recording. (5) That the recording has been preserved in a manner that is shown to the court. (6) That the speakers are identified. (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*Id.*, *quoting United States v. McMillan*, 508 F. 2d 101, 104 (8th Cir. 1974). It is important to note, however, that these "factors are general guidelines for a district court to use in evaluating if the Government has met its burden," and the government is not required to meet every one of the seven factors. *Id.* (internal citations omitted). Significantly, *McMillan* and its progeny do not speak in terms of a "chain of custody," rather, the factors enumerated above "are useful to determine if a 'tape's "substance and the circumstances under which it was obtained [provide] sufficient proof of its reliability."'" *Id.* (internal citations omitted).

Mr. Cockrell bears the burden of demonstrating that an evidentiary objection to the admission of the recordings played at trial would have likely succeeded. He has not done so and indeed he cannot. The government, through its witnesses, laid a sufficient foundation for the admissibility of those recordings, and this Court properly admitted them. Unless Mr. Cockrell can demonstrate that an objection would likely have succeeded in excluding the recordings, he has suffered no prejudice and therefore is not entitled to relief.

**E.    Mr. Cockrell has suffered no prejudice as a result of his counsel's failure to object to the recordings being "selectively edited," because they were not selectively edited," therefore it is unlikely that any such objection would have**

-16-

**been sustained.**

Mr. Cockrell complains of his counsel's failure to object to the admission of the recorded conversations, alleging that the recordings were "selectively edited." However, Mr. Cockrell offers no support for this accusation. Mr. Cockrell bears the burden, with respect to each of his many claims, of proving both deficient performance on the part of his counsel and prejudice resulting from such performance. *Patterson*, 133 F. 3d at 647. With regard to his claim for relief based upon the failure to object to the recordings having been "selectively edited," he has done neither. His claim is factually and legally frivolous and this Court will summarily deny his claim for relief in this regard.

F.    **Mr. Cockrell has suffered no prejudice as a result of his counsel's failure to object to the "introduction of the transcripts," because the transcripts were not admitted.**

Mr. Cockrell next alleges that he received ineffective assistance of counsel when his attorney failed to object to the "introduction of the transcripts of the intercepted phone calls." Unfortunately, like virtually all of his other claims, this one is cast in conclusory terms and wholly unsupported by any reference to the record. In point of fact, the transcripts of the recorded telephone calls were not "introduced" to the extent that they were not offered or admitted as exhibits. Quite to the contrary, the jury was repeatedly instructed - both during and at the conclusion of the trial - that the transcripts were ***not*** evidence. Specifically, the Court instructed the jury:

> As you've heard there is a typewritten transcript of a tape recording you're about to hear. The transcript also attempts to identify the speakers engaged in the conversation.
>
> You are permitted to have the transcript for the limited purpose of

trying to follow the conversation as you listen to the tape recording, and to help you try to keep track of the speakers. Any differences between what you hear in the recording and what you read in the transcript may be caused by such things as an inflection in the speaker's voice. **It is what you hear, however, and not what you read that is the evidence.**

You are specifically instructed that **whether the transcript correctly or incorrectly reflects the conversation or the identity of the speakers is entirely for you to decide** based upon what you have heard here about the preparation of the transcript, and upon your own examination of the transcript in relation to what you hear in the tape recording. **If you feel that the transcript in any respect is incorrect or unreliable, you should disregard it to that extent.**

(Transcript of Jury Trial, Volume I, hereinafter, "Tr. Vol. I," pages 49-50).

After that instruction was given for the first time, counsel for Mr. Cockrell indicated that it was her "understanding that [the jury] will not be getting a physical transcript other than what's in the courtroom, but not to take into deliberations. It's to help with the audio version, but nothing beyond that." (Transcript of Jury Trial, Volume II, hereinafter, "Tr. Vol. II," page 4, lines 4-7). The government agreed, noting "the transcript itself is not evidence," and that the jury would "not have access to this transcript during their deliberations." (Tr. Vol. II, page 4, lines 15-21). The transcripts were NOT admitted into evidence and were NOT provided to the jury during deliberations.

Quite simply, Mr. Cockrell's attorney could not have objected to the admission of the transcripts because they were not admitted. They were not even offered as exhibits. To the extent that he claims his attorney should have objected to the transcripts being *shown* to the jury, Mr. Cockrell has not proffered even a single example of incomplete, inaccurate, or otherwise objectionable material in those transcripts. He certainly has not demonstrated that this Court is

-18-

likely to have prohibited the government from showing the transcripts to the jury, even if Mr.

Cockrell's attorney had objected to their use. Therefore, he has failed in his burden to

demonstrate that he has suffered some prejudice and is not entitled to relief.

> **G.    Mr. Cockrell did not receive ineffective assistance of counsel when his attorney failed to object to the government's witnesses' identification of his voice in the recorded calls, because Mr. Cockrell testified and admitted that the voice was his.**

Incredibly, Mr. Cockrell next alleges that he received ineffective assistance of counsel

when his attorney failed to object "to the witness identification of Movant's alleged voice." This

claim is shockingly frivolous. Mr. Cockrell testified on his own behalf at trial. On cross-

examination, he engaged in the following exchange with counsel for the government:

Q. Your name is in fact Lance Cockrell, yes?

A. Yes.

Q. Do you typically go by Lance?

A. Yes.

Q. Is that what your friends call you?

A. Yes.

Q. Do your friends also call you Fat Boy?

A. Yes.

Q. When you spoke to Avery West on the phone, he typically called you Fat

Boy; is that right?

A. Yes.

(Transcript of Jury Trial, Volume III, hereinafter, "Tr. Vol. III," page 55, lines 13-25). While

Mr. Cockrell correctly notes that "the Government claimed the Movant was known as "Fat Boy,"" but admits that two different persons who they claim to be associates of the principle target were known as "Fat Boy," it is imperative to note that Mr. Cockrell has never denied being the "Fat Boy" to whom Avery West was speaking in the recorded telephone calls played at trial. To the contrary, Mr. Cockrell repeatedly admitted it during his trial testimony.

Counsel for the government questioned Mr. Cockrell about a specific call that had been admitted as an exhibit and played for the jury. The call pertained to an incident in which Mr. Cockrell had been pulled over by police and discovered to be in possession of a small amount of marijuana. Counsel for the government asked Mr. Cockrell about a phone call he had placed to his brother, Ronnie, a St. Louis County Police Department officer, shortly after the traffic stop.

Q.     You talk to your brother, Ronnie, in August of 2006 after you got pulled over by the Berkeley police; is that correct?

A.     Yes, ma'am.

Q.     And you called Ronnie, and you said, hey, I got caught with some weed and what should I do? Is that pretty much the size of it?

A.     Yes.

Q.     And you called somebody else after that traffic stop, did you not?

A.     Yes, ma'am.

Q.     You called Avery West?

A.     Yes, ma'am.

Q.     You had a conversation with Avery West about that traffic stop?

A.     Yes, ma'am.

Q.     And that's the call that the jury heard the other day, right?

A.     Yes ma'am.

(Tr. Vol. III, pages 60-61). Later, counsel for the government asked Mr. Cockrell whether he had become aware that the government was "tapping" Avery West's telephone in the summer of 2006. (Tr. Vol. III, page 61, lines 11-13). During that line of questioning, Mr. Cockrell was asked, "And you were on the phone during that summer of 2006, talking to Avery West on the phone?" Mr. Cockrell answered, "Yes, ma'am." (Tr. Vol. III, page 61, lines 19-21).

Counsel for the government went on to question Mr. Cockrell *no fewer than two dozen times* about specific phone conversations he'd had with Avery West in the summer of 2006, nearly all of which were played for the jury. At no point in time did Mr. Cockrell ever deny that it was he who was intercepted in those conversations. (Tr. Vol. III, pages 62-82). Over and over again, Mr. Cockrell admitted to participating in telephone conversations with Avery West in which they discussed not only the above-referenced traffic stop, but also the possibility that someone was "snitching" on him and Avery West. (Tr. Vol. III, page 72, lines 15-24). For Mr. Cockrell to now suggest that his counsel was ineffective for failing to object to the government's witnesses identifying his as the voice intercepted in the calls played for the jury at trial is an affront to this Court. Dozens of times, *under oath*, Mr. Cockrell admitted that it was he who was speaking to Avery West in those calls. Any objection to the voice identification would have been not only ill-received, but unethical. Counsel did not provide ineffective assistance when she failed to object to identification of Mr. Cockrell's voice.

**H.     Mr. Cockrell has not demonstrated that he suffered any prejudice as a result of any of the remaining deficiencies he alleges were committed by his attorney.**

Mr. Cockrell asserts, in "laundry list" fashion, that his attorney committed a series of

-21-

transgressions at trial and that these transgressions were "cumulative and prejudicial." These acts and/or omissions are contained on pages 5 and 6 of Mr. Cockrell's motion and are denoted as paragraph 8, subparagraphs (a) through (j).  Suffice it to say that Mr. Cockrell has wholly failed in his burden to demonstrate that he suffered prejudice as a result of *any* of the alleged deficiencies claimed in paragraph 8 of his motion. He has not so much as even suggested that the outcome of his trial would have been different but for counsel's alleged errors. *Davis*, 865 F. 2d at166.  This Court declines to evaluate counsel's performance in the absence of any showing of prejudice.  "If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice...that course should be followed." *Strickland*, 466 U.S. at 680. In the instant case, it is clearly far easier for this Court to summarily reject Mr. Cockrell's claims based upon his failure to demonstrate prejudice, and on that ground the claims are rejected.

## IV.   MR. COCKRELL DID NOT RECEIVE CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL.

Mr. Cockrell asserts that his court-appointed attorney provided him constitutionally ineffective assistance of counsel on direct appeal when she filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). To be sure,  "[A] criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal." *United States v. Davis*, 508 F. 3d 461, 463 (8th Cir. 2007), *citing Bear Stops v. United States*, 339 F. 3d 777, 780 (8th Cir. 2003).

> To establish ineffective assistance of appellate counsel, [petitioner] must show that counsel's performance was deficient, and prejudice from the deficiency. The deficient performance standard is rigorous. 'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal.' Therefore, absent contrary evidence, 'we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.' The prejudice standard is equally

rigorous. [Petitioner] must show that 'the result of the proceeding would have been different' had he raised the [ ] issue on direct appeal.

*United States v. Brown*, 528 F. 3d 1030, 1032-1033 (8th Cir. 2008)(internal citations omitted).

"Generally, when counsel submits an *Anders* brief, the court independently reviews the record for any nonfrivolous issue. If the court finds a nonfrivolous issue, it will direct counsel to more fully brief the issue." *United States v. Davis*, 508 F. 3d 461, 464 (8th Cir. 2007) (internal citations omitted). In *Anders*, the Supreme Court instructed that it is "the duty of the court, and not counsel, to review the record and ultimately decide whether the case is wholly frivolous." *Id., citing Anders*, 386 U.S. at 744. In the instant case, the Eighth Circuit Court of Appeals complied with its obligation, noting that it has conducted "careful de novo review." *United States v. Cockrell*, 365 Fed. Appx. 44 (8th Cir. 2008)(unpublished). Following that de novo review, the Court of Appeals wrote, "[H]aving reviewed the record independently under *Penson v. Ohio*, 488 U.S. 75 (1988), we have found no nonfrivolous issues." *Id*.

Clearly, appellate counsel did not provide constitutionally ineffective assistance. The United States Court of Appeals for the Eighth Circuit completed a thorough de novo review of the entire record in the underlying criminal case. Had the Court identified any legitimate avenue of appeal that had not been raised by counsel on Mr. Cockrell's behalf, the Court would have instructed her to fully brief the issue. That the Court failed to identify any nonfrivolous issue demonstrates irrefutably that there is no issue, if raised on appeal, that would have likely resulted in reversal. Not only did Mr. Cockrell receive effective assistance of appellate counsel, he suffered no prejudice as a result of the filing of an *Anders* brief and he is therefore not entitled to relief.

**V.     MR. COCKRELL WAS NOT DENIED HIS SIXTH AMENDMENT RIGHT OF
CONFRONTATION WHEN THE GOVERNMENT FAILED TO CALL
FORENSIC CHEMISTS AS WITNESSES, BECAUSE MR. COCKRELL
HIMSELF STIPULATED TO THE TESTIMONY OF THOSE WITNESSES.**

Next, Mr. Cockrell asserts that he received constitutionally ineffective assistance of
counsel when his attorney neglected to object to the government's failure to call as witnesses at
trial certain forensic chemists who had conducted laboratory analyses of controlled substances
seized during the government's investigation. Relying upon *Melendez-Dias v. Massachusetts*,
129 S. Ct. 2527 (2009), Mr. Cockrell claims that the government's failure to call these witnesses
violated his Sixth Amendment right of confrontation. Mr. Cockrell concedes that his trial
counsel "stipulated to the admission of the report" in lieu of the testimony of the witnesses. In
this regard, Mr. Cockrell is only partially correct. Counsel for Mr. Cockrell did not stipulate to
the admission of the reports prepared by the forensic chemists. Rather, she stipulated to the
substance of the testimony of the forensic chemists. The reports themselves were not admitted
as exhibits.

While conceding that his attorney stipulated to the testimony of the forensic chemists,
obviating the need for their live testimony, Mr. Cockrell asserts that the right of confrontation "is
so important that it should not be waivable, except in writing." Unfortunately for Mr. Cockrell,
he **_did_** waive that right in writing. The parties entered into a stipulation as to the substance of the
testimony of two forensic chemists who had conducted laboratory tests on suspected controlled
substances seized from Mr. Cockrell and/or his co-conspirators. Admitted into evidence as
government's Exhibit 14 at trial, the stipulation contains not only the signature of counsel for the
government and counsel for Mr. Cockrell, but of Mr. Cockrell himself. Therefore, Mr. Cockrell

did, in fact, waive his right to confront and cross-examine these forensic chemists and no violation of his Sixth Amendment rights occurred. In light of Mr. Cockrell's complete agreement with the stipulation as to the testimony of these two witnesses, as evidenced by his signature, Mr. Cockrell did not receive ineffective assistance of counsel.

Even assuming, *arguendo*, that Mr. Cockrell's attorney had provided constitutionally ineffective assistance when she stipulated to the testimony of the forensic chemists, Mr. Cockrell has demonstrated no prejudice. Although he cites various statistics with regard to the frequency with which laboratory tests are conducted improperly, he has provided no evidence whatsoever tending to establish that any such errors were made in his case. He fails to identify any line of cross-examination which might have been explored, and how that cross-examination is likely to have caused a different outcome at trial. He has shown no prejudice and is therefore not entitled to relief.

## VI.   MR. COCKRELL'S CLAIMS THERE WAS "NO EVIDENCE" THAT HE SOLD DRUGS OR TRANSPORTED DRUGS IS NOT PROPERLY BEFORE THIS COURT.

Mr. Cockrell urges this Court to find that there was "no evidence that he ever sold drugs, transported drugs . . . or profited from any activity in the business." Even assuming this claim is true, it is important to note that Mr. Cockrell was not charged with distribution of drugs, nor with any offense related to the transportation of drugs. Rather, Mr. Cockrell was charged with *conspiring* with others to distribute and possess with the intent to distribute drugs. The government was not required to prove that any completed offense had occurred, merely that Mr. Cockrell had entered into an agreement or understanding with others to commit the offense.

Perhaps more importantly, the United States Court of Appeals for the Eighth Circuit has

concluded that there were "no nonfrivolous issues" on which Mr. Cockrell could have appealed

his conviction, including sufficiency of the evidence. In her *Anders* brief, counsel for Mr.

Cockrell argued that the evidence was insufficient to support Mr. Cockrell's conviction. The

Court of Appeals disagreed, affirming his conviction and sentence. In so doing, it noted that:

> The evidence at trial included the testimony of Drug Enforcement
> Administration agents who conducted surveillance, monitored
> telephone conversations, interpreted those conversations, and
> interviewed Cockrell after executing a search warrant at his
> residence. The agent who conducted the interview testified that
> Cockrell admitted that he permitted his residence to be used as a
> "stash house" for the drugs and that Cockrell acknowledged
> brokering drug transactions for others. We conclude that the
> evidence in this case was legally sufficient to support the
> conviction.

*Cockrell*, 365 Fed. Appx. at 44. To the extent that Mr. Cockrell argues that the evidence was

insufficient to support his conviction, the Court of Appeals has determined that the evidence

was, in fact, sufficient. Mr. Cockrell is not entitled to re-litigate that issue herein.

Even assuming Mr. Cockrell somehow raises an issue not previously decided by the

Court of Appeals, "'[I]t is firmly established that the remedy provided by Title 28 U.S.C.A.

§2255 cannot be used to serve the functions and purposes of an appeal.'" *Cardarella v. United

States*, 351 F. 2d 443, 447 (8th Cir. 1965) (internal citations omitted). The United States Court of

Appeals for the Eighth Circuit has specifically instructed that "[n]either the sufficiency of an

indictment nor the sufficiency of the proof to sustain a conviction may be raised by a § 2255

motion." *Id*. Mr. Cockrell's claim with regard to the quality (or quantity) of the evidence used

to convict him is not properly before this Court and his request for relief will be summarily

denied.

## VII.   MR. COCKRELL'S CLAIM THAT EVIDENCE OF THE AK-47 WAS IMPROPERLY ADMITTED IS NOT PROPERLY BEFORE THE COURT.

Mr. Cockrell's last complaint for relief alleges that evidence of an AK-47 firearm, seized from the residence of a co-defendant, was "highly prejudicial and clearly poisoned the jury." Mr. Cockrell did not raise this issue on direct appeal. It is well-settled that "[a] petitioner simply cannot raise a non-constitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *United States v. Anderson*, 25 F. 3d 704, 706 (8th Cir. 1994). "'Normally, a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief.'" *Reid v. United States*, 976 F. 2d 446, 447 (8th Cir. 1992). The United States Supreme Court has "long and consistently held that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

In theory, Mr. Cockrell could have raised the issue of the admissibility of the AK-47 on direct appeal. His appellate counsel failed to do so. Under certain circumstances, her failure may have amounted to ineffective assistance of counsel. However, absent contrary evidence, this Court should 'assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.' *Brown*, 528 F. 3d at 1032-1033. In addition, even assuming that counsel's failure to raise the issue did constitute ineffective assistance, "[Petitioner] must show that 'the result of the proceeding would have been different' had he raised the [ ] issue on direct appeal." *Id*. Mr. Cockrell has not offered any evidence tending to suggest that the evidence of the AK-47 was excludable, that a motion to exclude it at trial would have been successful, or that a direct appeal of its admission would have likely been successful. Therefore, he has

demonstrated no prejudice resulting from counsel's failure to raise the issue of the admissibility

of the AK-47, either at the trial court or on appeal. As a result, he is not entitled to relief.

### CONCLUSION

For the foregoing reasons, Cockrell's § 2255 motion is **DENIED**.

**SO ORDERED** this 15th day of February, 2012.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

-28-